## Tarlo's Estate. No. 2

Before Gest, Henderson, Van Dusen and Sinkler, JJ.

**212**

*Mercer B. Tate, Jr.*, for exceptant.

*John G. Bechtel* and *Charles Hunsicker*, contra.

GEST, J., March 10, 1933.—The auditing judge awarded the balance for distribution, after the payment of debts, to the administrator of the estate of Albert Tarlo, the father of the decedent, who had died unmarried and without issue. The exceptant, Louis Koch, is the grandfather of the decedent, and claims the estate on the ground that Albert Tarlo, the father and next of kin, had forfeited his right of inheritance because he was guilty of the murder of the decedent, under the provisions of section twenty-three of the Intestate Act of 1917.

The facts of the case are undisputed and appear in the testimony, including that produced in the estate of Mary Clara Koch, October Term, 1914, No. 312, and considered at the audit by the agreement of counsel. In brief, on November 27, 1930, Albert Tarlo shot and killed his wife, who occupied the same bedroom with him in the family residence. He then immediately went to the bedroom of his daughter, Marie C. N. Tarlo, in the upper story of the same house, shot and killed her and then committed suicide, surviving his daughter by a few hours.

The act of assembly above mentioned provides:

"No person who shall be finally adjudged guilty, either as principal or accessory, of murder of the first or second degree, shall be entitled to inherit or take any part of the real or personal estate of the person killed, as surviving spouse, heir, or next of kin to such person under the provisions of this act."

This statutory provision was avowedly passed by the legislature, as recommended by the Commission of 1915, in order to abrogate the decision of the Supreme Court in Carpenter's Estate, 170 Pa. 203, which was followed in Johnson's Estate, 29 Pa. Superior Ct. 255. Inasmuch as Albert Tarlo was not tried and convicted of the murder of his daughter, nor finally adjudged guilty thereof, the auditing judge ruled that no forfeiture had been incurred, and the estate of the homicide was entitled in distribution.

The learned counsel for Louis Koch, the grandfather, next of kin, if Albert Tarlo were excluded, in his very able and ingenious argument, contended that the auditing judge erred for several reasons.

First, that the wrongdoer would be permitted to profit by his own wrong, which would be against the public policy of the Commonwealth. This proposition was urged by able counsel (including the late W. U. Hensel, Esq.), in Carpenter's Estate, but without effect upon the court. We shall refer again hereafter to this, but we regard this branch of the case as settled.

In the second place, the learned counsel for the exceptant bases an argument upon the phraseology of the act of assembly, which says that "No person who

shall be finally adjudged guilty of murder," etc., that is, not merely "convicted," a word applicable to criminal proceedings, but "adjudged," whence it is urged that the orphans' court, in the distribution of an estate, has the right to adjudge or adjudicate whether the homicide was or was not guilty, the term "adjudge" being applicable to civil and not to criminal jurisprudence. We do not agree with this construction of the act, which clearly contemplates that the homicide shall be found to be guilty of murder in the first or second degree, a matter which can only be properly determined by the court of oyer and terminer after indictment and trial. The word "adjudged," upon which so much stress was laid, is, notwithstanding the ingenious argument of counsel, appropriately used. The words are "finally adjudged guilty;" that is, a mere conviction, even if followed by sentence, is not sufficient, for conviction with sentence is not necessarily final. "Finally adjudged" means, and can only mean, that the sentence, after conviction, if an appeal is taken, is affirmed by the Supreme Court, and the word "adjudged" is correctly used in reference thereto. So long ago as 1825, Gibson, J., in Searight v. Com., 13 S. & R. 301, refers to the Act of March 20, 1818, 7 Sm. Laws 86 (where the date is given as March 18, 1818), which provides that in all criminal cases where a defendant or prosecutor is "adjudged" to pay the costs of prosecution, he shall pay a jury fee of $4 as included in the costs. The word "adjudged," said Justice Gibson, can be predicated only of an act of the court. The regular formula used in our reports is that after verdict a judgment of sentence is passed, and the Supreme Court, in cases of affirmance, uses the phraseology, "the judgment is affirmed and the record is remitted to the court below for the purpose of execution," as may be seen by reference to the reports of such cases (selected at random from the same volume of reports) in Com. v. Luccitti, 295 Pa. 190, Com. v. Quaranta, 295 Pa. 264, and Com. v. Touri, 295 Pa. 50. Nothing could be plainer than this: When the Supreme Court says "the judgment is affirmed," the defendant is certainly "adjudged" guilty.

Finally, the learned counsel for the exceptant appeals to the equitable powers of this court and argues that the homicide should be treated as a constructive trustee of the title acquired by his own wrong, and has favored us with an interesting and elaborate argument upon this branch of the case, and has referred us to many cases in other jurisdictions, where, however, we find that there is much conflict of authority. We are concerned here, however, with the construction of an act of assembly passed, as it clearly appears, in view of Carpenter's Estate. While the orphans' court applies the doctrines of a court of equity, this equitable power is limited to matters arising within our jurisdiction and does not extend beyond it. We add that in our opinion it is manifest that the legislature, in enacting this section twenty-three of the Intestate Act, advisedly required that the guilt of the alleged murderer must be judicially ascertained by the court of competent jurisdiction before the orphans' court can decree that the murderer has forfeited his right of inheritance. Any other interpretation of the act might lead to seriously conflicting judgments, and if it be permitted to cite the explanatory note to this section, contained in the report of the commissioners (as to which see Miles's Estate, 272 Pa. 329, and the cases cited therein on pages 339 and 340), it appears that the question of the homicide's guilt, under the criminal law, must be determined, as therein stated, by his conviction in the proper forum. Let us suppose a case that might readily occur. If the homicide is acquitted of murder in the oyer and terminer, could this court, in distributing an estate, "adjudge" him guilty of murder? Or, conversely, if this court should adjudge him innocent, and he should subsequently be finally convicted in the oyer and terminer of murder, would our adju-

dication deserve consideration? In Carpenter's Estate the murderer was convicted in the oyer and terminer and hanged for the murder of his father, for the very purpose of inheriting his property, yet the Supreme Court held that he had not forfeited his rights under the intestate law, and expressly ruled upon the question of public policy which the learned counsel so strongly urges on us, that a wrongdoer cannot be permitted to profit by his own wrong. The Intestate Act of 1917 provides for a forfeiture under certain conditions, but lays down no general rule of public policy, and as this case does not fall within the act of assembly, we are of opinion that the auditing judge was correct in his adjudication.

The literature upon this subject is voluminous, and the learned counsel for the exceptant has displayed great industry in his brief of argument. To discuss all the cases cited by him would be impossible without writing a treatise upon the subject. Some interesting discussions, however, may be found in 30 Harv. L. R. 622, 36 Am. Law Reg. (N. S.) 225, and 64 Univ. of Penna. L. Rev. 307; but we do not consider it necessary to prolong this opinion, as we concur with the adjudication; the exceptions of Louis Koch thereto are dismissed and the adjudication is confirmed absolutely.